**SHADE, ESTATE OF, In Re**

**McDONALD, Exr. v McDONALD**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1669.  Decided June 5, 1941

Sidney G. Kusworm, Dayton; Webb R. Clark, Dayton; Gene B. Bacher, Dayton, for plaintiff-appellant.

Allen C. McDonald, Dayton, for defendant-appellee.

**OPINION**

By GEIGER, PJ.

This matter is before this Court on an appeal directly from the Probate Court of Montgomery County, Ohio.

It had its inception in an application by one Allen C. McDonald, wherein he represents to the Court that he was qualified as the executor of Sarah A. Shade; that he is the owner of a certain claim against "said defendant" founded upon a written contract with Sara A. Shade and her husband under date of January 8, 1929; that said written contract is lost; that it provided that the said George W. Shade and Sara A. Shade, both now deceased, agreed with said Allen C. McDonald to reimburse him for a sum paid by him to Conrad Flockencier, in settlement of a claim against him and the Shades.

On September 14, 1940, the cause came on for hearing upon the application for the allowance of the claim

against the estate and the Court found that on January 28, 1929, a written agreement was entered into by George W. Shade and Sara A. Shade with the said Allen C. McDonald in which said Shades, in consideration of the advancements to and payment for them by the said Allen C. McDonald of the sum of $1509.30, agreed to pay and reimburse him for said amount. The Court finds that said claim is a just and valid claim against the estate.

On September 14, 1940, the estate of Sara A. Shade and certain of the heirs at law and next of kin of Sara A. Shade moved the Court to set aside the judgment for the reasons therein stated. On the same day, September 14, 1940, the cause coming on to be heard on the motion for new trial, the Court overrules said motion to which ruling "said estate" of Sara A. Shade and the devisees, etc., by counsel except.

The defendant, McDonald, as executor, gives notice of appeal from a judgment of the Court rendered in his favor as an individual, he, in the notice of appeal, being represented by the attorneys appointed to protect the interests of the estate.

An assignment of errors is filed by the special counsel, as attorneys for appellant, who is the executor and in whose favor as an individual the claim was allowed. There are nine paragraphs of the assignment, being to the effect that the Court erred in refusing to sustain the estate's demurrer to the evidence; in overruling the estate's motion to dismiss the claim at the end of the claimant's testimony; permitting the claimant to testify; in allowing claimant's exhibit to be introduced and finding that the agreement was ever signed or that it was lost and in finding that there was a proper foundation for admitting the carbon copy; in finding that nothing had been paid; in ruling that the claimant's testimony was limited, whereas the Court should have ruled that the claimant was precluded from testifying; that the Court erred in finding for the claimant and against the estate.

We shall recite briefly the facts in this case that seem to be supported by the evidence and upon which counsel for both sides agree with some divergence and differences, which will be noted or ignored if not of consequence.

Sara A. Shade and George Shade were husband and wife. He died during 1934 and she on December 7, 1937. During the latter years of their life they were interested in a medicine company together with Allen C. McDonald, the claimant, and F. C. Hubble, who was later succeeded in the business by Conrad Flockencier. The first contract of association for the manufacture of the medicine was in June, 1924, and Flockencier succeeded Hubble in 1926. In 1928 Flockencier filed a suit against McDonald and the two Shades, Hubble and one Gosnell, also associated in the business, praying judgment for $5000.00. On January 28, 1929, Allen C. McDonald, then mayor of the city of Dayton, gave to Howard P. Williamson. attorney for Flockencier, his personal check in the amount of $1546.46. The check is introduced as claimant's Exhibit 1. Upon it a statement is made "In settlement of Flockencier cases in Common Pleas Court".

McDonald drew Mrs. Shade's will in which he was named executor and following her death, he filed his claim with the estate in the amount of $1509.30 which he claims to have expended for the Shades in settlement of the lawsuits.

At the trial the claimant introduced what purports to be a copy of an instrument executed by Mr. and Mrs. Shade, which is the foundation of the claim. The original was not introduced in evidence, as it had been lost.

The medicine business was conducted by the Shades, McDonald and Hubble, who retired in 1926, and whose place Flockencier then took. Flockencier had been a friend of the Shades for many years, being associated with them in spiritualistic seances. He became dissatisfied with his contract and claimed he had been defrauded by McDonald, the Shades, Hubble and Gosnell.

The agreement provides in part.

"We, the undersigned, George W. Shade and Sara A. Shade hereby agree with the said Allen C. McDonald to pay and reimburse him for the said amount so paid by him by the sale of the one-half interest owned by Flockencier in the Shade Medicine business to some other party or parties, or to secure the necessary funds in some other manner, with interest on said payment so made by McDonald, within a reasonable time from this date."

At the trial, Miss Horn, the stenographer of McDonald testified (pp. 1-12) to the execution of this contract at the office of Mr. McDonald and in her presence. She testified she and others made diligent search for the original, but were unable to find it, but did discover the manifold unsigned copy, which was produced in evidence. Carrie W. Thomas, another stenographer of McDonald, testified (pp. 41-45) substantially as Miss Horn.

Counsel for the estate objected to this unsigned carbon copy on the ground that it was not the best evidence obtainable, quoting in support of his position 17 O. Jur. 252-255. The trial court, however, finally admitted the copy as evidence.

We are in accord with the ruling of the Court in this matter and are persuaded from the evidence that the Shades executed the contract and that the original paper, in the confusion incident to the taking over of McDonald's office by the state officials, became lost and is not available. We, therefore, find that the Court committed no prejudicial error in permitting the copy to be introduced.

At the trial McDonald, the claimant, offered himself as a witness over the objection of the attorneys for the estate, as contrary to the provisions of §11495. The court in permitting McDonald to testify stated, "You are limited in your testimony Mr. McDonald". To this, counsel for the estate seriously object, claiming that the court should

have ruled that the testimony offered by McDonald was incompetent and that he was disqualified as a witness to testify at all and that the court was in error in allowing the witness to testify under restrictions.

Sec. 11495 under the caption "WHEN PARTY SHALL NOT TESTIFY" provides that "a party shall not testify when the adverse party * * * is an executor or administrator, or claims or defends as heir * * * of a deceased person except (1) The facts which occurred after * * * the time decedent died."

We are of the opinion that under the section of the statute in question, McDonald was a competent witness to testify under paragraph (1) even though he was a party, to all facts which occurred after the death of Mrs. Shade.

Counsel for the estate severely criticizes the holding of the court that there was any evidence to establish that the claim had not been paid and especially do they object to McDonald's testimony to that effect. Mr. McDonald's secretary testifies distinctly that she placed the original contract in the safe together with the manifold copy now produced and that to her knowledge no payment was ever made by the Shades; that she had knowledge as secretary of all moneys paid to McDonald. Margaret Knauer (pp. 36-37) testified that the Shades had told the witness that they had not paid anything on their obligation to McDonald; that they were financially embarrassed, and did not have any money with which to pay. To same effect see Carrie B. Thomas, p. 44.

We are, therefore, of the opinion that the assignment of error to the effect that there was no evidence that the obligation was still unpaid should not be sustained and that the court did not commit reversible error in overruling the demurrer to the evidence or the motion to dismiss, which was based on the ground that there was no evidence submitted showing nonpayment.

Counsel for the estate also assert as strong evidence against the claim of McDonald the fact that during the years intervening between 1929 and the time of the death of the widow, McDonald made payments to them, counsel claiming that it would be unlikely that McDonald would make such payments if, as a matter of fact, those to whom the payments were made were at the time indebted to him. The evidence does not disclose that the payments were of any particular size or importance and we do not consider this fact as sufficient to outweigh the written contract of the parties, if such contract has been otherwise sufficiently established.

It is also urged that inasmuch as McDonald was a party to the Flockencier case and that he was at the time the Mayor of the city of Dayton and that he did not desire that his name be associated with the transaction because fraud was alleged by Flockencier by virtue of the fact, not only that those selling to Flockencier misrepresented the business, but also that through the trickery of spiritualism they persuaded him that the departed spirits of his near friends were urging him to buy into the medicine business, that McDonald was most vitally interested in having the case dismissed and that the payment of the money which he now seeks to recover from the Shade estate was, as a matter of fact, paid for his own protection and in his own interest. This is a very good argument but can not weigh in face of the contract of the Shades to reimburse him for the amount he paid. It may equally be said. unless the Shades felt responsible they would not have agreed to reimburse McDonald.

On page 23, et seq., a Mr. Gosnell, long associated with the medicine business and with McDonald, testified that the Shades stated to him that they had signed a paper to the effect that they would reimburse McDonald for the money expended in the settlement of the Flockencier transaction. This witness on page 24 testified that the Shades stated that they had to reimburse McDonald "on account that they had signed this paper to reimburse you (McDonald) on the Flockencier case". "They told about getting Flockencier in it and that they were responsible for it and that they were going to try to get somebody else." The witness testifies on pages 25 and 26 that Flockencier told the Shades that "he was guided by the spiritual force and he wanted to get into the business".

Counsel for the estate levels criticism at a number of statements made by the witnesses, both on direct and cross-examination but we do not find them of sufficient importance to overcome the contract to reimburse McDonald provided said contract was legally established.

## SECTION 11495.

An important task is to determine whether or not McDonald was disqualified under §11495, as a witness in any matter, concerning which the Court permitted him to testify.

McDonald in his brief and his evidence shows a clear conception of the limitations imposed upon him as a claimant against the estate by §11495. He comments in his brief, pages 18, et seq., that manifestly he would not be permitted to testify as to any contracts made by him with the Shades or any conversations had with them, inasmuch as both were, at the time of the hearing, deceased, but he maintains that the provisions of the section do not prohibit him from becoming a witness for any purpose.

It appears from this record that the court was quite careful to sift out that part of McDonald's proffered testimony which would dangerously infringe upon the disqualification under the statute. The court strikes out that part of his statement made by him as a witness that the amount for which the application has been filed "is not paid and never has been paid".

Counsel for the estate argues earnestly that the evidence does not support the judgment of the court. The only witnesses offered by the defendants are Reva Fay Wright and Howard

P. Williamson. Miss Wright is a vigorous witness who appears to the court to have overstated what she claims to have been the facts in the case. It appears from the record that she is a legatee and devisee under the will of Mrs. Shade and naturally she was anxious to defeat the claim of McDonald. The testimony of Williamson touches the position of McDonald in reference to the suit that was compromised by giving the check in question. Its broadest implication is that McDonald was the real defendant with the inference that the Shades were under no obligation to re-pay him the amount he paid to Williamson, the attorney for Flockencier. This is simply an inference upon the part of Williamson overborne by the evidence of the contract.

The claimant has presented a number of witnesses who appear to be creditable, although most of them associated with him in business, who have testified to facts that seem to demonstrate that McDonald did put up the money necessary to compromise the cases and that the Shades did enter into a written contract to compensate him for the money thus expended. The evidence quite clearly supports his claim that no part of his claim against the estate was ever repaid, the only adverse evidence on this point being that of Miss Wright, whose interest is clearly apparent.

The court below had the opportunity to observe the witnesses and the right to conclude that McDonald had established his claim. We find nothing in the evidence that would justify us in concluding that the court below was manifestly in error upon the factual or legal questions involved in the proof of the claim. We, therefore, find that the errors assigned on this point should not be sustained.

There may be other errors assigned which we have not passed upon in this opinion, but we are of the opinion that none display any prejudicial error upon the part of the court below. The judg-

ment of the court below will be affirmed.

Judgment accordingly.

BARNES and HORNBECK, JJ., concur.